UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MARIA SANCHEZ and JOSE GARCIA,

                    Plaintiffs,

          v.

GRANDVIEW SCHOOL DISTRICT NO.
200,

                    Defendant.

NO. CV-10-3118-EFS

**ORDER GRANTING PLAINTIFFS'
MOTION FOR INJUNCTIVE RELIEF
AND SETTING DISPUTE-
RESOLUTION MEETING**

A hearing occurred in the above-captioned matter on February 22, 2011. Kerri W. Feeney and Meg Bridewell appeared for Plaintiffs Maria Sanchez and Jose Garcia; Joni R. Kerr appeared on Defendant Grandview School District No. 200's ("District") behalf. Before the Court was Plaintiffs' Motion for Injunctive Relief (ECF No. 2). After reviewing the materials and relevant authority and hearing from the parties, the Court was fully informed and granted Plaintiffs' motion. This Order memorializes and supplements the Court's oral rulings.

## I. BACKGROUND[1]

Plaintiff Jose Garcia, an eighteen-year-old student at Grandview High School, has suffered from sensorineural hearing loss since birth. Mr. Garcia has been raised by his mother, Plaintiff Maria

---

[1] This "Background" section is based on the facts asserted in Plaintiffs' Complaint (ECF No. 1), Plaintiffs' Motion for Injunctive Relief (ECF No. 2), and any documents related thereto.

ORDER * 1

Sanchez, who is a single parent, a monolingual-Spanish speaker, and unable to read or write in any language.  Mr. Garcia enrolled as a student in the District in 1996 and was referred for special education services under the "Hard of Hearing" category.  Aside from his hearing loss, Mr. Garcia is of average to above-average intelligence and presents no other qualifying special-education conditions.

Plaintiffs allege the District failed to provide appropriate or consistent speech and language pathology services and precluded Ms. Sanchez from meaningfully participating in Mr. Garcia's educational planning.  And as a result, Mr. Garcia is functionally illiterate and depressed, with no system for meaningful communication and very limited prospects for work and independent living.

On January 15, 2010, Ms. Sanchez filed a Due Process Hearing Request with the Office of Superintendent of Public Instruction (OSPI).  A nineteen-day hearing occurred in spring and summer 2010, which were translated into Spanish Ms. Sanchez could understand.  Dr. Wendy Marlowe, a clinical neuropsychologist and language pathologist, and Jennifer White, an educational and vocational consultant who specializes in deaf, heard of hearing, and blind individuals, testified at the hearing.  Both specialists had evaluated Mr. Garcia and developed recommendations for remedial education.  The Administrative Law Judge (ALJ) adopted Dr. Marlowe's and Ms. White's recommendations into the record as findings of fact.

On October 13, 2010, the ALJ issued an Order finding that the following actions violated the IDEA by denying Mr. Garcia a free appropriate public education and Ms. Sanchez meaningful access to his Individualized Education Plan (IEP) meetings:

ORDER * 2

1.  The District failed to provide forty minutes of speech and language pathology services per week in conformity with his IEPs.

2.  Given the information known to the District at the time the IEPs were developed, i.e., that Mr. Garcia was not showing improvement despite the fact that he was not cognitively impaired, the District should have known that forty minutes of speech and language pathology services per week was insufficient.

3.  Despite the fact that the District knew as early as 1999 that Mr. Garcia's hearing disability would negatively impact his ability to learn, the District never took steps necessary to provide him with an in-class FM amplification system selected and calibrated for his hearing aids until he was in eleventh grade.

4.  The District failed on multiple occasions to provide Ms. Sanchez with written materials in her native language and conducted IEP meetings without an appropriate interpreter.

5.  Some completed IEP forms do not reflect what occurred at the meetings, list participants who were not actually present, and demonstrate that the District predetermined two IEPs without considering Ms. Sanchez's input.

6.  Mr. Garcia's third-grade teacher did not pursue sign-language instruction with Mr. Garcia because he was "self-conscious."

7.  The District failed to provide any transition planning for Mr. Garcia in his October 5, 2008 or October 5, 2009 IEPs.

8.  The District changed Mr. Garcia's placement from a self-contained special education classroom in eighth grade to a

combination of resource room and general education in ninth grade, without amending the IEP or reevaluating him.

9.    Had the District provided Mr. Garcia with appropriate supplemental aids and services, i.e., an FM system, SLP services, and sign training, he would have been able to participate in a general education curriculum during many of the years he spent in a self-contained classroom.

As a remedy for these violations, the ALJ ordered Ms. Sanchez to choose the services of either Dr. Marlowe or Ms. White to evaluate Mr. Garcia; Ms. Sanchez would be reimbursed for the costs. The District was also ordered to contract with Dr. Marlowe and Ms. White to "design and implement" an appropriate program for Mr. Garcia within sixty (60) days of the ALJ's October 13, 2010 Order, with the District bearing all costs associated with that plan. Correspondence between counsel and testimony at the hearing shows that while negotiations are ongoing, the District and Dr. Marlowe and Ms. White have been unable to agree on contract terms. As a result, no contract has been signed and an appropriate IEP has not been designed and implemented for Mr. Garcia.

After the sixty (60) days passed on December 13, 2010, Plaintiffs filed their Complaint for declaratory judgment, injunctive relief, and damages on December 16, 2010, alleging that the District failed to develop and implement an appropriate educational program as required by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401 et seq., the Rehabilitation Act, 29 U.S.C. § 794, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. 1210 et seq., and seek immediate

ORDER * 4

enforcement of the October 13, 2010 Administrative Order.  The instant motion quickly followed.

After hearing the parties' January 6, 2011 arguments, the Court denied in part Defendant's Motion to Dismiss for Lack of Jurisdiction (ECF No. 17), and retained jurisdiction over the case.[2]  (ECF No. 23, at 6.)

## II. DISCUSSION

Plaintiffs' motion for injunctive relief seeks 1) immediate enforcement of the ALJ's October 13, 2010 order, 2) damages of $2,000.00 for each day the program is not in effect, and 3) reasonable attorney fees and costs.  The District opposes the motion, arguing that Plaintiffs have failed to meet the requirements for a preliminary injunction.

**A.  Preliminary Injunction Standard**

"A preliminary injunction is not a preliminary adjudication on the merits: it is an equitable device for preserving the status quo and preventing the irreparable loss of rights before judgment." *Textile Unlimited v. A..BMH and Co., Inc.*, 240 F.3d 781, 786 (9th Cir. 2001). "A plaintiff seeking a preliminary injunction must establish that he is

---

[2]  The Court found:

Plaintiff's remedy lies in an enforcement petition to the OSPI. But another OSPI due process hearing would not adequately address and resolve the remedy Plaintiffs seek–immediate enforcement of the ALJ's October 13, 2010 Order.  Any further attempt by Plaintiffs to redress their grievances within the IDEA administrative process (either by initiating another OSPI due process hearing or through the state complaint procedures) would be futile or inadequate.  Accordingly, the Court is persuaded that it has jurisdiction over this case and that a preliminary injunction is an appropriate form of relief.

(ECF No. 23, at 6.)

ORDER * 5

likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (citing *Winter v. NRDC*, 129 S. Ct. 365, 374 (2008)).

The Ninth Circuit's "'serious questions' approach survives *Winter* when applied as part of the four-element *Winter* test." *Alliance for the Wild Rockies v. Cottrell*, 622 F.3d 1045, 1050-51 (9th Cir. 2010). "In other words, 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test are also met." *Id*.

**B.   Analysis**

Plaintiffs allege that the District violated the IDEA when it failed to comply with the following provision in the ALJ's October 13, 2010 Order:

> 32. . . . The District shall contract with Dr. Marlowe and Ms. White to design and implement an educational program and placement for the Student consistent with the recommendations contained in Dr. Marlowe's Neuropsychological Evaluation (ECF No. 10, Ex. 3, at 82) and the recommendations contained in Ms. White's Consultation Services Report (ECF No. 10, Ex. 1, at 28).  The program shall be designed and implemented for the Student within 60 calendar days of the entry of this Order. The District shall bear all costs and expenses associated with the design and implementation of this educational program.  The program shall continue for a period of **six years** from the date it is implemented.  It is concluded that the student is likely to benefit from such a highly individualized and intensive program such that six years will more likely than not place him in the same position he would have been in had the District provided him with FAPE during the entire period at issue.

(ECF No. 1, Ex. 1, at 51) (citations added, emphasis in original).

ORDER * 6

"The IDEA is a comprehensive educational scheme, conferring on disabled students a substantive right to public education and providing financial assistance to enable states to meet their educational needs." *Hoeft v. Tuscon Unified Sch. Dist.*, 967 F.2d 1298, 1300 (9th Cir. 1992). Under IDEA, school districts must provide eligible disabled students with a free, appropriate education through an individualized written program known as an IEP. *See* 20 U.S.C. §§ 1401(a)(18), (20), 1415(a). Material failures to implement an IEP violate the IDEA; minor discrepancies between the services a school provides and the services required by the IEP do not. *Van Duyn v. Baker Sch. Dist.*, 502 F.3d 811 (9th Cir. 2007). Disabled children and their parents have the right to have complaints resolved at a full adversarial hearing before an impartial hearing officer, to consider "identification, evaluation, and educational placement of the child, and the provision of a free appropriate public education to such child." *Id*. § 1415(b)(6), (f)(1).

Ms. Sanchez exercised her right to an adversarial hearing. After nineteen days of testimony, the ALJ found the District violated the IDEA in several ways: it failed to provide Mr. Garcia with a free, appropriate education that accommodates his disability. The remedies ordered by the ALJ were clear and straightforward. The District was to contract with Dr. Marlowe and Ms. White, whose recommendations were found credible and adopted into the record, to design and implement a program consistent with their recommendations within sixty (60) days. Correspondence between counsel and testimony at the hearing demonstrate that the District disagrees with Dr. Marlowe and Ms. White as to contractual terms. The Court recognizes that each contracting party is entitled to careful consideration of the anticipated contract's terms. Yet to this

ORDER * 7

date, this task has not been accomplished.  The deadline for taking such action passed on December 13, 2010.

After consideration, the Court finds that all four preliminary injunction prongs have been met in this case.  Plaintiffs have demonstrated a likelihood of success on the merits: contracts for Mr. Garcia's educational program have not been designed or implemented by the December 13, 2010 deadline and thus, the District continues to violate the IDEA.  Regrettably, this delay is to the detriment of a child who has done nothing but ask for educational opportunities.  Each day that passes without an appropriate education plan for Mr. Garcia is another day in which he falls farther behind in school, and farther from being able to read, communicate, and meaningfully participate in society.  On balance, the equities tip sharply in Plaintiffs' favor.  And the public's interest favors requiring the District to comply with the ALJ's Order: educating an at-risk, hearing-challenged child such as Mr. Garcia to help him become a productive member of society is in the public's interest.

Accordingly, the Court is convinced that remedial action in the form of a preliminary injunction is necessary.  Plaintiffs have no ability to post a bond or security as required under Federal Rule of Civil Procedure 65(c); thus, the Court declines to order one.  *See Governing Council of Pinoleville Indian Cmty. v. Mendocino Cnty.*, 684 F.Supp. 1042 (N.D.Cal., 1988) ("Notwithstanding [Rule 65(c)'s] literal language, courts have discretion to excuse the bond requirement under appropriate circumstances, such as . . . where suit is brought on behalf of a group of mostly indigent persons.").  The Court awards no damages or attorneys fees at this time.  Plaintiffs may renew their request for fees at a later date.  *See* 20 U.S.C. § 1415(i)(3)(B)(I) ("In any action or

ORDER * 8

proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability.").

### III. CONCLUSION

Accordingly, for the reasons given above, **IT IS HEREBY ORDERED**:

1. Plaintiffs' Motion for Injunctive relief **(ECF No. 2)** is **GRANTED** (injunction), **DENIED** (damages), and **DENIED WITH LEAVE TO RENEW** (attorneys' fees) **IN PART**.

2. A dispute-resolution meeting is set for **Tuesday, March 1, 2011, at 9:00 a.m. in Yakima**, before Magistrate Judge Hutton. All counsel, Ms. Sanchez, Dr. Marlowe, Ms. White, and any individuals authorized to contract on the District's behalf shall be present.

3. At this meeting, the District shall enter into a contract(s) ("Contract") with Dr. Marlowe and Ms. White that complies with the ALJ's October 13, 2010 Order, which states:

> 32. . . . The District shall contract with Dr. Marlowe and Ms. White to design and implement an educational program and placement for the Student consistent with the recommendations contained in Dr. Marlowe's Neuropsychological Evaluation (ECF No. 10, Ex. 3, at 82) and the recommendations contained in Ms. White's Consultation Services Report (ECF No. 10, Ex. 1, at 28). The program shall be designed and implemented for the Student within 60 calendar days of the entry of this Order. The District shall bear all costs and expenses associated with the design and implementation of this educational program. The program shall continue for a period of six years from the date it is implemented. It is concluded that the student is likely to benefit from such a highly individualized and intensive program such that six years will more likely than not place him in the same position he would have been in had the District provided him with FAPE during the entire period at issue.

(ECF No. 1, Ex. 1, at 51) (citations added).

4. The Contract shall retain Dr. Marlowe's and Ms. White's services for designing and implementing an appropriate program for Mr. Garcia,

consistent with their recommendations, which were adopted into the record as findings of fact.  In addition to design and implementation, these services include provision of professional services and coordination with other providers.  The Contract shall continue for six years from the day it is implemented.  Much like an IEP, the program and services provided may be reevaluated on a yearly basis to adapt for deficiencies shown or progress made.  But if the contracting parties agree that the Contract shall be renewed on a yearly basis, the District will have a continuing duty to contract with Dr. Marlowe and Ms. White for the six-year duration.  And because it is inconsistent with the ALJ's October 13, 2010 Order and overly broad, the Contract shall not contain a provision stating that it "may be terminated by the Superintendent upon written notification thereof," though the Court recognizes that the District has a duty to ensure that the contracted services are being performed and must have a remedy if it concludes they are not.  (ECF No. 25-2.)  The Contract shall be enforceable in any Washington Superior Court, not the OSPI.  Disagreements as to annual implementation will be resolved by the OSPI.  The ALJ's October 13, 2010 Order shall be the touchstone of the Contract's terms and all questions shall be resolved consistent with its letter and spirit.

    **IT IS SO ORDERED**.  The District Court Executive is directed to enter this Order and provide copies to counsel.

    **DATED** this____28th_____ day of February 2011.


                    _____
                         S/ Edward F. Shea
                         EDWARD F. SHEA
                    United States District Judge

Q:\Civil\2010\3118.PI.wpd

ORDER * 10